# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LENORE R. OWENS, JEAN L. JEWETT, LORI L. BUKSAR, and JULIA SNYDER, on behalf of themselves, individually, and on behalf of all others similarly situated, | Case No. 14-cv-4068 |
| Plaintiffs, | Judge Sharon Johnson Coleman |
| v. | |
| ST. ANTHONY MEDICAL CENTER, INC., THE FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION, FRANCISCAN COMMUNITIES, INC. f/k/a FRANCISCAN HOMES & COMMUNITY SERVICES, FRANCISCAN HOLDING CORPORATION, FRANCISCAN ALLIANCE, INC., DONNA GOSCIEJ, LIDNA HORNYAK, the ST. ANTHONY MEDICAL CENTER RETIREMENT COMMITTEE, the members of the ST. ANTHONY MEDICAL CENTER RETIREMENT COMMITTEE, LEONARD WYCHOCKI, WALTER GARBARCZYK, JULIE SECVIAR, CHESTER LABUS, and SISTER HELENE GALUSZKA, the members of the FSCSC BOARD OF DIRECTORS, SISTER M. FRANCIS CLARE RADKE, SISTER M. FRANCINE LABUS, ANNETTE SHOEMAKER, JILL KRUEGER, LAWRENCE LEAMAN, SANDRA SINGER, SUSAN NORDSTROM LOPEZ, and JOHN AND JANE DOES, each an individual, 1–40, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs, former employees of the St. Anthony Medical Center, bring this suit against numerous defendants based on the underfunding and ultimate termination of the plaintiffs' pension

plan. The defendants now move to dismiss the plaintiffs third amended complaint for failure to state a claim. For the reasons set forth herein, that motion is granted in part and denied in part.

**Background**

The following facts are taken from the plaintiffs' complaint and are accepted as true for the purpose of this motion. The plaintiffs were all employed by the St. Anthony Medical Center and were eligible for pension benefits under the St. Anthony Medical Center Retirement Plan ("the Plan"). Lenore Owens was employed as a medical transcriptionist at St. Anthony Medical Center from 1976 until 2000. She received pension benefits from 2010 until the Plan was terminated. Jean Jewett was employed at St. Anthony Medical Center from 1975 until 2006 and received a pension benefit from her retirement in 2006 until the Plan's termination. Julia Snyder and Lori Buksar both worked as nurses for St. Anthony Medical Center, and were both eligible to receive a pension benefit under the Plan.

The Franciscan Sisters of Chicago Service Corporation ("the Service Corporation") is a 501(c)(3) not-for-profit corporation chartered and headquartered in Illinois. Defendants Donna Gosciej and Linda Hornyak are the Vice President of Human Resources and Manager of Compensation and Benefits for the Service Corporation, respectively. The Service Corporation is the sole member of a number of other affiliated entities, including, among others, the St. Anthony Medical Center and Franciscan Communities, Inc. Through these affiliated entities, the Service Corporation operates a network of ten senior living communities providing independent living, assisted living, skilled nursing, Alzheimer's and dementia care, hospice care, home care, and rehabilitation services. The Service Corporation provides its affiliated entities with program and administrative support for their operations, including human resources services. As the sole corporate member of the affiliated entities, the Service Corporation also appoints their boards, officers, and key employees.

The Board of Directors of the Service Corporation consists of nine members, all but two of whom are lay people.

St. Anthony Medical Center was incorporated under Indiana law for the purpose of constructing and operating a hospital in Crown Point, Indiana. On March 1, 1975, St. Anthony Medical Center established the Plan as a non-contributory defined benefit pension plan. The Plan had three participating employers: St. Anthony Medical Center, Franciscan Communities, Inc., and Franciscan Holding Corporation. Defendant Franciscan Alliance, Inc. owns and controls the Franciscan Holding Corporation. At the time of its creation, the Plan stated that all benefits would be provided through a group annuity contract issued by an insurer.

St. Anthony Medical Center promoted the plan as a benefit to its employees. Under the terms of the Plan, an employee became eligible to participate in it after performing one year or 1,000 hours of service. Once eligible to participate in the Plan, an employee would earn one year of credited service for each calendar year in which they worked 1,000 hours or more. After accruing five years of credited service, an employee became vested in the plan and was entitled to receive a normal monthly retirement benefit at the age of 65 or, if so elected, a reduced monthly benefit at the age of 55. Early in the existence of the plan, a Summary Plan Description was distributed to plan participants informing them that the assets of the Plan would be held in an annuity contract with traveler's Insurance Company and that, if the plan was ever terminated, vested participants would receive a deferred insured annuity contract for the full amount of the benefits that they had accrued. The Summary Plan Description also represented that the Plan was subject to ERISA and was insured by the Pension Benefit Guarantee Corporation.

In 1989, the Plan sought a private letter ruling from the IRS that it qualified as a Church Plan exempt from many of ERISA's requirements, including the funding requirements and the obligation to pay premiums to the Pension Benefit Guarantee Corporation to ensure a certain level

of benefits in the event that the plan was terminated. In an undated private letter, the IRS ruled that the Plan qualified as a Church Plan from the time of its creation. The contents of this letter were not shared with the Plan's participants.

On February 1, 1995, the Fund's assets were transferred to Traveler's to fund group annuity contracts that provided for the benefits and future cost of living increases owed to all Plan participants who retired prior to March 1, 1995. On March 1, 1995, the plan was converted from an insured annuity plan to a trusteed plan. Bank One became the trustee for the retirement plan, and the trust became responsible for providing benefits to all plan participants who subsequently retired or were terminated. The participants thus become dependent on St. Anthony Medical Center and the participating employers to remain solvent and to continue to contribute to the Retirement Plan.

In 1999, the Service Corporation sold St. Anthony Hospital to Franciscan Alliance. Under the terms of the sale, Franciscan Alliance acquired all of the physical assets of the hospital in exchange for $150 million, which St. Anthony Medical Center, Inc. transferred to the Service Corporation to fund the construction and operation of new senior living facilities. At the time of the sale, all existing St. Anthony Medical Center employees became Franciscan Alliance employees.

Shortly before the sale of the hospital, St. Anthony Medical center and the Service Corporation declared that the Plan was frozen with respect to all hospital employees and that no further benefits would accrue under the plan. The Plan participants, however, remained entitled to receiving their accrued pension benefits under the plan upon reaching retirement age. St. Anthony Medical Center and the Service Corporation continued to maintain the Plan and, with the other participating employers, remained responsible for its operating expenses and funding.

When the retirement plan was frozen in 1998, it was fully funded. The Plan documents forbid any amendment terminating the plan that would decrease a participant's accrued benefit. Thus, the Plan allowed for termination only when the vested accrued benefits were provided

through the purchase of group or individual annuity contracts. Rather than terminating the Plan and making such a payment, St. Anthony Medical Center and the Service Corporation continued to maintain the Plan, but with insufficient assets to meet the expected benefit payments under the Retirement Plan.

After the Hospital's sale, the Plan could only be funded by contributions from Participating Employers or the investment gains accrued from the Plan's assets. St. Anthony Medical Center and the Service Corporation were required to establish a funding policy in order to ensure that the Plan's investments would be coordinated with the Plan's short-term and long-term financial needs. That funding policy, in turn, would dictate each participating employers' required contributions to the retirement plan. No such funding plan was established, however, and in its absence, the participating employers failed to make the necessary contributions to the Plan.

At the end of the 2001 fiscal year, St. Anthony Medical Center reported net assets of $2,244,433 and no liabilities related to the Plan. At the end of the 2002 fiscal year, it reported net assets of $1,828,465 and no liabilities related to the Plan. At the end of the next fiscal year, however, the company reported negative assets of $12,077,697, the result of an $12,924,132 adjustment for liability related to the funding of the retirement plan. At the end of the 2009 fiscal year, St. Anthony Medical Center reported an "underfunded pension fund obligation" of $35,219,451. Notwithstanding this shortfall, St. Anthony Medical Center and the Service Corporation continued to assure Plan participants that they would be eligible to receive their full pension benefits under the Retirement Plan.

On March 6, 2012, the Plan was amended in order to effectuate its termination on March 31, 2012. That amendment, which was allegedly invalid under the Plan's terms, reduced all accrued benefits by 30% and reduced the benefits of participants electing to receive payment in the form of an annuity by an additional 10%. In an April memorandum, the Plan Administration Committee

5

informed Plan participants that the plan was being terminated because it was underfunded. A subsequent memorandum described the benefit reductions.

At no point prior to these memoranda were the Plan participants informed that their retirement benefits were no longer fully insured by an insurance contract, that there was no Funding Policy, or that the Plan was underfunded. The defendants did not issue regulatorily required notice of their intent to terminate the Plan, did not qualify for a "distress termination," and did not file a distress termination notice with the Pension Benefit Guarantee Corporation. As a result of the termination, the plaintiffs have been deprived of their expected income in retirement, have been forced to return to work, and have been unable to meet their living expenses.

The plaintiffs subsequently initiated the present action.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must assert factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

**Discussion**

*The Plaintiffs' ERISA Claims*

The defendants first contend that the plaintiffs' breach of fiduciary duty claims under the ERISA statute (Counts XI-XIII) are barred by ERISA's three-year statute of limitations. Under the ERISA statute:

> no action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
> \*\*\*
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Statute of limitations defenses rarely prevail at the motion to dismiss stage because such defenses typically turn on facts that are not yet before the Court. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). In order for a statute of limitations defense to succeed at the motion to dismiss stage, the allegations in the complaint must set forth all of the facts necessary to satisfy the affirmative defense. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If any set of facts would establish a defense to the statute of limitations, the motion to dismiss must be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

Here, the defendants contend that the statute of limitations began to run when the plaintiff's gained actual knowledge of the alleged breaches of fiduciary duty. The defendants assert that this occurred when the plaintiffs received the 2005 SDP, which disclosed that the Plan was an employer-contribution funded church plan. The defendants further contend that additional knowledge was conferred from 1995 onwards when the defendants failed to furnish the plaintiffs with ERISA-

7

required information, statements, and reports. The defendants' characterizations of the complaint notwithstanding, the complaint does not clearly allege that the plaintiffs received and understood the significance of the 2005 SDP or were aware that they were not receiving ERISA-required documents. To the contrary, the plaintiffs plausibly argue that the statute of limitations began to run when the plan was terminated in 2012 because it was at that time that the plaintiffs were deprived of their guaranteed benefits. Accordingly, the allegations in the complaint do not clearly establish when the plaintiffs had actual knowledge of the alleged breaches of fiduciary duty. The defendants' statute of limitations defense concerning Counts XI–XIII is therefore premature.

The defendants similarly contend that the plaintiff's claims set forth in Counts I–X are barred by Section 413's three-year limitations period. Although the parties dispute whether it is appropriate to subject these counts to analysis under section 413, this Court need not resolve that dispute at this juncture. Assuming without deciding that section 413 applies, this Court has already determined that dismissal under section 413's statute of limitations is premature.

In the alternative, the defendants assert that all of the plaintiffs' ERISA claims are time-barred by section 413's statute of repose. Section 413 provides, in pertinent part, that no action may be commenced "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1).

The defendants, in a conclusory argument, claim that Counts I-XIII all concern the common question of whether the 1989 conversion of the ERISA retirement plan to a non-ERISA church plan satisfied the provisions of the statutory exemption. Accordingly, the defendants assert that the plaintiffs' claims are barred by ERISA's six-year statute of repose. That argument might have merit if, like in *Flight Attendants Against UAL Offset v. Comm'r of Internal Revenue*, 165 F.3d 572 (7th Cir. 1999), this case arose as an administrative appeal of that specific agency decision, or if the

8

defendants had offered authority establishing the legal significance of the 1989 letter ruling with respect to the plan. *Cf. Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 530 (7th Cir. 2016), *reversed on other grounds by* 137 S.Ct. 1652 (2017) (recognizing that IRS letter rulings only have persuasive authority and are not owed the same deference as agency interpretations reached through a formal process). The claims in this case, however, are based on conduct that occurred after the 1989 letter ruling was issued. The defendants have offered no persuasive authority permitting this Court to base the statute of repose on conduct other than that expressly alleged in the individual counts of the complaint. To the contrary, section 413's statute of repose expressly extends to the last action constituting the violation or the latest date on which the breach or violation could be cured, which, on the allegations in the complaint, would appear to be the 2012 termination of the plan in a severely underfunded state.

In yet another alternative argument, the defendants contend that the plaintiffs' claims brought under 29 U.S.C. § 1132(a)(3) are equitable in nature and are therefore barred by the laches doctrine. In equitable matters, the laches doctrine bars a plaintiff's claims if the plaintiff has delayed the suit unreasonably and the delay prejudices the defendants' ability to mount their defense. *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). The defendants assert that, if the plaintiffs are correct that section 413 does not apply to Counts I-V and VII-X, then their claims must be equitable claims under 29 U.S.C. § 1132(a)(3) to which laches would apply. Assuming without deciding that the laches doctrine is applicable to the ERISA claims at issue here, the defendants have failed to establish that its application is warranted. As a general matter, courts are hesitant to apply laches where a plaintiff's suit falls within a limitations period expressly provided by statute. *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1090 (7th Cir. 1992).

Here, the defendants argue that all of the plaintiffs' ERISA claims are subject to a statute of limitations. Even absent that statute of limitations, the defendants' arguments of unreasonable delay

9

are, as this Court previously noted in reviewing the defendants' statute of limitations arguments, premature in light of the contents of the complaint. *Cf. Am. Commercial Barge Lines, LLC v. Reserve FTL, Inc.*, No. 01 C 5858, 2002 WL 31749171, at *1 (N.D. Ill. Dec. 3, 2002) (Hibbler, J.) ("Ordinarily a motion to dismiss is not the appropriate vehicle to raise the defense of laches."). The defendants' generalized assertions of prejudice, moreover, lack the specificity necessary to justify the application of a laches defense. *See Partee v. Cook County Sheriff's Office*, 863 F. Supp. 778, 783 (N.D. Ill. 1994) (Alesia, J.) (recognizing that off-hand references to faded memories are insufficient to satisfy the defendant's burden of showing prejudice in a laches defense).

The Court accordingly concludes that the defendants' arguments for dismissal of the plaintiffs' ERISA claims based on a statute of limitations, statute of repose, or laches are unavailing. The defendants have not offered any substantive arguments for the dismissal of the plaintiffs' ERISA claims based on their merits, and therefore they have failed to establish that Counts I–XIII should be dismissed.

*The Plaintiffs' Establishment Clause Claim*

The defendants next contend that the plaintiffs have failed to state an establishment clause claim challenging ERISA's church-plan exemption. In their reply brief, the defendants argue for the first time that the plaintiffs lack standing to challenge the constitutionality of the church-plan exemption because the church-plan at issue no longer exists. Although arguments raised for the first time in reply are normally forfeited, this Court has an independent responsibility to inquire into jurisdictional questions. *Olson v. Bemis Co., Inc.* 800 F.3d 296, 300 (7th Cir. 2015); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Nevertheless, the defendants conclusory, one-sentence argument does not warrant this Court's attention or plausibly call the plaintiffs' standing into question. Unlike the sole case that the defendants rely on, there is a justiciable controversy to be resolved here. *See Deveraux v. City of Chicago*, 14 F.3d 328, 331 (7th Cir. 1994) (holding that a declaratory judgment claim

seeking to establish the constitutionality of a seniority roster was not justiciable where the city had voluntarily abandoned the use of the roster).

The government intervened in this case pursuant to 28 U.S.C. § 2403(a) for the limited purpose of defending the constitutionality of the ERISA statute and the church-plan exemption. As an initial matter, the government correctly contends that this Court must determine whether the challenged plan is a church-plan before reaching the plaintiffs' constitutional challenge to the church-plan exemption. *See Escambia County v. McMillan,* 466 U.S. 48, 51, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984) (recognizing that courts should refrain from deciding constitutional questions when there are other grounds on which to resolve the matter); *Bhd. of Locomotive Eng'rs and Trainmen v. Union Pac. R.R.*, 522 F.3d 746, 750 (7th Cir. 2008) ("[I]t is a fundamental rule of judicial restraint that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable.") (internal citation and quotation marks omitted). Although Count I of the plaintiffs' complaint contests the applicability of the church-plan exemption to the Plan, the defendants only sought the dismissal of that count on limitations grounds. The defendants have not asked this Court to dismiss that count based on the merits of the plaintiffs' argument that the Plan is not a church-plan. Because the parties have not briefed that issue, this Court cannot decide it at this juncture. This Court is therefore obligated to refrain from considering the constitutionality of the church-plan exemption until that threshold issue has been properly presented and decided.

*The Plaintiffs' State Law Claims*

Finally, the defendants contend that the plaintiffs have failed to state viable claims under state law and that their state law claims should therefore be dismissed. The defendants assert that the plaintiffs' breach of contract claim is barred by Illinois' ten-year limitations period for breach of contract claims and that the plaintiffs' unjust enrichment, negligence, and breach of fiduciary duties

are barred by Illinois' five-year limitations period.[1]  735 ILCS 5/13-205; 735 ILCS 5/13-206.  The defendants contend that these claims accrued in 1995 (when the Plan transitioned from being an insured-annuity plan) or, at latest, in 2005, when the plaintiffs received the 2005 SPD.

Claims for breach of continuing contracts, however, accrue at the date of the first breach only if the breach is total.  Otherwise, they accrue on the different dates of each separate breach. *Hi-Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1409 (7th Cir. 1993); *Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 422, 2015 IL App (5th) 140037.  Breach of fiduciary duty claims, unjust enrichment claims, and tort claims arising out of contracts are treated similarly to breach of contract claims under Illinois law.  *See Estate of Brown v. Arc Music Group*, 830 F. Supp. 2d 501, 511 (N.D. Ill. 2011) (Leinenweber, J.); *Kinzer v. City of Chicago*, 539 N.E.2d 1216, 1220, 128 Ill.2d 437 (1989).  The statute of limitations, however, does not begin to run until the plaintiff discovers, or has reason to discover, the cause of action.  *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135, 166 Ill.2d 72 (1995).  Thus, the statute of limitations here would not have began to run until the plaintiffs knew, or in the exercise of reasonable diligence should have known, (1) that they were injured; (2) the cause of their injury; and (3) that there was some indication of wrongdoing.  *Newell v. Newell*, 942 N.E.2d 776, 781, 406 Ill.App.3d 1046 (2011).  As previously noted, the allegations in the complaint do not clearly establish when the plaintiffs learned of their injury.  Thus, the defendants' statute of limitations arguments are premature.[2]

The defendants alternatively contend that the plaintiffs' state law claims are barred by Illinois' laches doctrine.  Under Illinois law, the latches doctrine is applicable upon a showing of (1)

---

[1] Although there is a pending question of whether Illinois or Indiana law applies to this action, the defendants concede that this Court should analyze their statute of limitations and laches defenses under Illinois law and rely on Illinois law in advancing those defenses.  Based on this concession, the Court will review the defendants' limitations arguments under Illinois law.

[2] The Court alternatively notes that, to the extent the contractual agreement provided that the defendants would pay plaintiffs benefits, the breach of that agreement would not have occurred until 2012, when the defendants terminated that plan.  Until that point, it appears from the allegations that the defendants were not precluded from complying with their contractual obligations.

lack of due diligence by the claimant and (2) prejudice to the opposing party. *Jameson Realty Group v. Kostiner*, 813 N.E.2d 1124, 1137, 351 Ill.App.3d 416 (2004). The laches defense, however, may only be considered on a motion to dismiss if its applicability appears from the face of the complaint and its supporting exhibits. *Id.* The defendants base their argument for laches solely on the plaintiffs' knowledge of the 2005 SPD. As previously set forth, the complaint does not clearly establish that the plaintiffs received and reviewed that document. The allegations of the complaint therefore do not establish that the plaintiffs did not exercise due diligence.

Having dispensed with the limitations issues which the defendants conceded this Court should review under Illinois law, this Court is now obligated to decide which law is applicable to its substantive review of the plaintiffs' state law claims. The defendants, in a lengthy footnote, assert that Indiana law should apply based both on the Plan's choice-of-law provision and on Illinois' choice of law rules. The plaintiffs fail to respond to the substance of that note, although their reliance on Illinois authorities suggest their continued belief that Illinois law should apply.

Here, the Plan expressly provides that "[t]he law of the State of Indiana shall be the controlling state law in all matters relating to the Plan and shall apply to the extent that it is not preempted by the laws of the United States of America." This broad provision is sufficient to encompass the defendants' claims. *Abbott Labs. v. Takeda Pharm. Co., Ltd.*, 476 F.3d 421, 424–26 (7th Cir. 2007). Absent any express opposition from the plaintiffs, this Court will therefore apply Indiana law in assessing the sufficiency of the plaintiffs' allegations.[3]

In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract, breach of that contract, and resultant damages. *Collins v. McKinney*, 871 N.E.2d 363, 369

---

[3] Although the Court need not address the defendants' choice-of-law analysis under Illinois law, the Court notes that the defendants failed to make the threshold showing that a conflict of laws exists, and that this Court would therefore be precluded from determining whether Illinois or Indiana law should apply in this matter to the extent the outcome is not dictated by the Plan. *See Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 898, 227 Ill.2d 147 (2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome.").

(Ind. Ct. App. 2007). Here, the plaintiffs allege that the plan documents collectively created a contract in which the defendants promised to pay the plaintiffs the full amount of their accrued benefits. The defendants assert that, to the contrary, the Plan expressly disclaimed such an obligation, providing that "nothing contained in this Plan by which it is implemented shall be deemed to require any Employer to make contributions under this Plan, and no Employer shall be under any legal obligation to continue its participation in this Plan." This provision is unambiguous in its application and is not expressly contradicted elsewhere in the Plan. *See Whitaker v. Brunner*, 814 N.E.2d 288, 293–94 (Ind. Ct. App. 2004) (citations and quotations omitted) ("The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract."). The plaintiffs' allegations, however, are not based solely on the text of the Plan, but instead on the Plan, plan summaries, benefits statements, other plan documents, as well as the defendants' generalized guarantee that, in exchange for continued employment, the participating employers would make ongoing contributions to fund specific benefits upon retirement. Although the defendants may have expressly disclaimed any responsibility to make specific contributions, such a disclaimer does not, based on the arguments before this Court, altogether eliminate their potential liability to provide the promised benefits. The Court accordingly sees no basis for dismissing the plaintiffs' breach of contract claim.

The defendants next contend that the plaintiffs have failed to state a claim for unjust enrichment. In order to state a claim for unjust enrichment, a plaintiff must allege that a measurable benefit was conferred on the defendant under such circumstances that the defendants' retention of the benefit without payment would be unjust. *Bayh v. Sonnenburg*, 573 N.E.2d 398 (Ind. 1991).

The defendants contend that the plaintiffs' unjust enrichment claim fails because such claims are not cognizable when an express contract governs the parties' conduct. The plaintiffs argue that

14

their unjust enrichment claim is an alternative argument raised in case this Court finds the Plan to be void and unenforceable. Under the Federal Rules of Civil Procedure, parties can state claims in the alternative even if the claims are contradictory. Fed. R. Civ. P. 8(e). Here, however, Count XVI, which contains the plaintiffs' unjust enrichment claim, does not allege the invalidity of the contract between the parties. Instead, it incorporates the plaintiffs' prior allegations, including the plaintiffs' allegations that the parties' relationship was governed by an express contract. Accordingly, the plaintiffs did not properly plead their unjust enrichment claim in the alternative and it must therefore be dismissed. *See Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (Castillo, J.) (dismissing an alternatively pled unjust enrichment claim where it incorporated by reference claims asserting the existence of a contract).

The defendants also challenge the adequacy of the plaintiffs' state law fiduciary duty claims. In order to establish a breach of fiduciary duty, a plaintiff must establish (1) the existence of a fiduciary relationship, (2) the breach of the duty owed by the fiduciary to the beneficiary, and (3) harm to the beneficiary. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). The defendants contend that the plaintiffs have failed to establish a fiduciary relationship.

St. Anthony, the Service Corporation, and the other Participating Employers are alleged to be fiduciaries in Count XVII based on "their roles as employers with respect to the Plan . . . pursuant to the Plan documents." Although the defendants attempt to argue that this pleading is too general to survive, the Plan here expressly identifies these entities as fiduciaries and delineates the specific nature of their fiduciary duties. The defendants, in conclusory fashion, seem to assert that no such duty could exist because the Plan's express language disclaims a contractual obligation to make contributions. That argument, however, is at odds with the Plan's language allocating fiduciary duty to the Employers for making "the contributions . . . necessary to provide benefits

15

under the Plan in respect to their employees." This express contractual language recognizing a fiduciary role for the specific conduct alleged against St. Anthony Medical Center and the other contributing employers is adequate to support the plaintiffs' allegations of a fiduciary relationship. *See O.K. Sand and Gravel, Inc. v. Martin Marietta Corp.*, 786 F. Supp. 1442, 1448 (S.D. Ind. 1992) (recognizing that courts impute fiduciary obligations in limited circumstances such as when a contract establishes or codifies a fiduciary relationship). The same contractual section establishes the Service Corporation's fiduciary responsibility with respect to the insurance of the plan. Finally, the Plan expressly provides that "[t]he Committee shall have the sole responsibility for the administration of this Plan, as specifically described in this Plan." In light of this fact, the plaintiffs have adequately alleged breach of fiduciary claims against the identified defendants. The defendants further argue that the plaintiffs have failed to identify with specificity particular breaches of fiduciary duty (seemingly by identifying the particular funds at issue). The voluminous allegations here, however, sufficiently demonstrate which funds and which conduct the plaintiffs are challenging, and the defendants have offered no authority requiring the level of specificity that they seek.

Finally, the defendants contend that the plaintiffs have failed to state a claim for negligence. The plaintiffs' negligence claim is based on the allegation that each defendant had a duty of care to ensure that the Plan was properly funded to cover all accrued pension benefits and to ensure that it was properly terminated. The defendants do not cite any caselaw questioning whether the failure to fund and properly terminate a retirement plan can give rise to a duty of care sufficient to sustain a negligence claim. Instead, they assert only that the allegations are conclusory because they do not explain the source of the duty or the relationship between each plaintiff and each defendant. The source of the duty, however, is clearly alleged to be the Plan. The allegations of the complaint, moreover, identify the defendants and their relationship to the plaintiffs. The defendants, in their reply, challenge whether the plaintiff's relationship with Franciscan Alliance, Inc. and Franciscan

Communities, Inc. was sufficient to create a duty of care. This Court, however, will not consider arguments for the dismissal of specific defendants that were raised for the first time in reply, and therefore declines to dismiss the plaintiffs' negligence claim. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir .2010) (recognizing that arguments raised for the first time in a reply brief are waived). Accordingly, the Court perceives no basis for dismissing the plaintiffs' negligence claim at this juncture.

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. This Court dismisses the unjust enrichment claims contained in Count XVI of the plaintiffs' complaint without prejudice and denies the defendants' motion in all other respects.

IT IS SO ORDERED.

Date: September 29, 2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge