**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LENORE R. OWENS, JEAN L. JEWETT, LORI L. BUKSAR, and JULIA SNYDER, on behalf of themselves, individually, and on behalf of all others similarly situated, | Case No: 1:14-cv-04068 |
| Plaintiffs, | Hon. Judge Sharon Johnson Coleman |
| v. | Hon. Magistrate Judge Jeffrey Cole |
| ST. ANTHONY MEDICAL CENTER, INC. ("SAMC"), THE FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION ("FSCSC"), FRANCISCAN COMMUNITIES, INC. f/k/a FRANCISCAN HOMES & COMMUNITY SERVICES, FRANCISCAN HOLDING CORPORATION, DONNA GOSCIEJ, LINDA HORNYAK, the SAMC RETIREMENT COMMITTEE, the members of the SAMC RETIREMENT COMMITTEE, LEONARD WYCHOCKI, WALTER GARBARCZYK, JULIE SECVIAR, CHESTER LABUS, and SISTER HELENE GALUSZKA, the members of the FSCSC BOARD OF DIRECTORS, SISTER M. FRANCIS CLARE RADKE, SISTER M. FRANCINE LABUS, ANNETTE SHOEMAKER, JILL KRUEGER, LAWRENCE LEAMAN, SANDRA SINGER, SUSAN NORDSTROM LOPEZ, and JOHN and JANE DOES, each an individual, 1-40, | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| Defendants. | |

## TABLE OF CONTENTS

Page

I.     **INTRODUCTION** ................................................................................................ 1

II.    **BACKGROUND** ................................................................................................ 2
    A.    Procedural History and Settlement Negotiations ................................ 2
    B.    Overview of the Settlement Agreement ............................................. 4
        1.    Monetary Consideration ......................................................... 4
        2.    Liquidation and Termination of the Plan ............................... 4
        3.    Certification of a Rule 23 Class ............................................ 5
        4.    Releases ................................................................................. 5
        5.    Notice .................................................................................... 5
        6.    Attorneys' Fees, Costs and Incentive Awards ........................ 6
    C.    Reasons for the Settlement ................................................................. 6

III.   **DISCUSSION** ................................................................................................... 7
    A.    The Standards for Preliminary Approval ........................................... 7
    B.    This Settlement Is Within the Range of Reasonableness Justifying
        Preliminary Approval ....................................................................... 10
        1.    The Settlement Provides Certain Relief and Eliminates the
                Uncertainty of Prevailing on the Merits ............................... 10
        2.    Class Counsel Endorse the Settlement .................................. 11
    C.    The Proposed Class Satisfies the Requirements for Certification Pursuant
        to Rule 23 of the Federal Rules of Civil Procedure. .......................... 12
        1.    Provisional Certification of the Settlement Class is Appropriate ............ 13
        2.    The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2). .......... 15
             a.    Rule 23(b)(1): Individual Actions Would Create
                    Inconsistent Adjudications or Be Dispositive of the
                    Interests of Absent Members. ....................................... 15
             b.    Rule 23(b)(2):  Defendants Have Acted on Grounds
                    Generally Applicable to the Class and Relief for the Class
                    as a Whole Is Appropriate ............................................ 16
    D.    Rule 23(g) Is Satisfied. ..................................................................... 18
    E.    The Proposed Notice Program Satisfies the Due Process Requirements of
        Rule 23. ............................................................................................ 18
    F.    Proposed Schedule ............................................................................ 19

IV.   **CONCLUSION** ............................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Advocate Healthcare Network v. Stapleton,*
  137 S. Ct. 1652 (2017) ..................................................................................................10, 11

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee,*
  616 F.2d 305 (7th Cir. 1980) .....................................................................................7, 8, 11, 12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,*
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................................................19

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,*
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ................................................................................12

*Barragan v. Evanger's Dog & Cat Food Co.,*
  259 F.R.D. 330 (N.D. Ill. 2009).........................................................................................13

*Brieger v. Tellabs, Inc.,*
  245 F.R.D. 345 (N.D. Ill. 2007)....................................................................................14, 15

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) .............................................................................................9

*Depoister v. Mary M. Holloway Found.,*
  36 F.3d 582 (7th Cir. 1994) ................................................................................................9

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
  768 F.2d 884 (7th Cir. 1985) ..............................................................................................9

*Flanagan v. Allstate Ins. Co.,*
  242 F.R.D. 421 (N.D. Ill.), *modified,* 242 F.R.D. 434 (N.D. Ill. 2007) ...................................13

*Goldsmith v. Tech. Sols. Co.,*
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995).................................................9

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.,*
  988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................................................8, 9

*Isby v. Bayh,*
  75 F.3d 1191 (7th Cir. 1996) ..............................................................................................9

*Kaplan v. Saint Peter's Healthcare Sys.*,
  810 F.3d 175 (3d Cir. 2015)............................................................................11

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)................................................................12, 13

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ....................................................................19

*McCue v. MB Fin., Inc.*,
  No. 1:15-cv-00988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ............................................8

*Mullane v. Cent. Hanover Bank Tr. Co.*,
  339 U.S. 306 (1950)......................................................................................18

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................................................19

*Neil v. Zell*,
  275 F.R.D. 256 (N.D. Ill. 2011)....................................................................15

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..........................................................................9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
  390 U.S. 414 (1968)........................................................................................9

*Rollins v. Dignity Health*,
  830 F.3d 900 (9th Cir. 2016) ........................................................................11

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ................................................................13, 14

*Scholes v. Stone, McGuire & Benjamin*,
  839 F. Supp. 1314 (N.D. Ill. 1993) ................................................................8

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
  No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)............................................11, 13

*Stapleton v. Advocate Healthcare Network*,
  817 F.3d 517 (7th Cir. 2016) ........................................................................11

iii

STATUTES

29 U.S.C. § 1001, *et seq.*.........................................................................................................1

29 U.S.C. § 1002(33) ...........................................................................................................1, 2

29 U.S.C. §§ 1362, 1364 ........................................................................................................14

CAFA ......................................................................................................................................20

ERISA .......................................................................................................................... *passim*

ERISA § 302 ...........................................................................................................................17

ERISA § 402 ...........................................................................................................................17

ERISA § 403 ...........................................................................................................................17

ERISA § 404 ...........................................................................................................................17

ERISA § 4022 .........................................................................................................................17

ERISA § 4041 .........................................................................................................................17

OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 .......................................................................... *passim*

*MANUAL FOR COMPLEX LITIGATION* § 13.14 (4th ed. 2016) ..................................................7

3B Moore's Federal Practice ¶ 23.80[4] (2d ed. 1978)...........................................................8

*Newberg on Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33 (5th ed. 2014) ................................19

Plaintiffs Lenore Owens, Jean Jewett, Lori Buksar, and Julia Snyder ("Plaintiffs"), by and through their attorneys, respectfully move the Court for an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement")[1] attached hereto as Exhibit 1;[2] (2) preliminarily certifying the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) approving the form and method of Class Notice; and (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Settlement, and payment of attorneys' fees and expenses. The Defendants do not oppose the relief sought in the Preliminary Approval Motion. However, Defendants dispute and disagree with many of the averments stated in this Memorandum.

## I.      INTRODUCTION

This Settlement resolves the claims of Plaintiffs in this case against all Defendants regarding the St. Anthony's Medical Center Retirement Plan (the "Plan"). The Third Amended Class Action Complaint ("TAC") alleges that Defendant St. Anthony Medical Center ("SAMC") denied ERISA[3] protections to the participants and beneficiaries of the SAMC Plan by incorrectly claiming that the Plan qualifies as an ERISA-exempt "church plan." *See* 29 U.S.C. § 1002(33); TAC, ECF No. 261. Among other things, Plaintiffs allege that, in violation of ERISA, SAMC and other Defendants failed to operate the Plan in accordance with ERISA, failed to provide minimum funding and other protections, terminated the Plan in a severely underfunded state in

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 to this Unopposed Motion for Preliminary Approval of Settlement Agreement ("Preliminary Approval Motion"). Capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement.

[2] All references to "Exhibit" or "Ex." are to the exhibits attached to this Preliminary Approval Motion and filed concurrently herewith.

[3] "ERISA" is a reference to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

March 2012 (the "Termination"), and distributed the assets of the Plan to Participants so that they only received what Defendants represented to be either a 30% or 40% reduction (for a lump sum distribution or annuity, respectively) of their accrued benefits. This Settlement was reached after arm's-length negotiations with a mediator. It required a mediator's proposal before the parties could come to agreement on a settlement amount. The Settlement represents the best monetary result for the proposed Settlement Class of participants and beneficiaries of the Plan that could be achieved in light of all legal and practical risks.

As a result of this Settlement, Defendants have agreed to settle all Released Claims against Defendants and other Released Parties in exchange for a settlement payment of $4 million in cash to an escrow account, with $1 million of that amount going to Plaintiffs' attorneys' fees, expenses and incentive awards. The remaining $3 million will be distributed to the Class on a *pro rata* basis according to the amount each participant's benefit was reduced on account of the Termination and subsequent distribution.

## II.     BACKGROUND

### A.          Procedural History and Settlement Negotiations

On June 2, 2014, Plaintiffs Lenore Owens, Jean Jewett, Lori Buksar, and Julia Snyder filed a putative class action Complaint in this Court against St. Anthony Medical Center and various other defendants (collectively, the "Defendants") alleging violations of ERISA. Compl., ECF No. 1. Plaintiffs are represented by Cohen Milstein Sellers & Toll PLLC and Keller Rohrback L.L.P. (collectively, "Class Counsel"). The Complaint alleges that Defendants denied ERISA protections to the participants and beneficiaries of the Plan, a defined benefit pension plan sponsored by SAMC, by incorrectly claiming that the Plan qualifies as an ERISA-exempt "church plan." *See* 29 U.S.C. § 1002(33). Among other violations, the Complaint alleges that Defendants: underfunded the Plan by over $32 million; improperly terminated the Plan while it

was underfunded; and improperly cutback the accrued benefits owed to participants through discounted lump sum distributions or annuities, decreasing participants' accrued benefits by 30% or 40%, respectively. Plaintiffs amended the Complaint three times throughout the litigation, most recently in December 2017 to add alternative state law claims in the event the Court determined that the Plan was not governed by ERISA. ECF No. 261.

The Parties first attended a mediation facilitated by nationally-known mediator Robert A. Meyer, Esq., of JAMS via teleconference in September 2016, while this case was stayed. *See* ECF No. 217. Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the church plan exemption. Ex. 1 at § 2.3; Declaration of Karen Handorf ("Handorf Decl.") ¶ 8. The matter was not resolved at the September 2016 mediation, but from August 2018 through November 2018 the Parties communicated with Mr. Meyer telephonically to continue pursuing a settlement. Handorf Decl. ¶¶ 10-12. The Parties accepted a mediator's proposal in November 2018. *Id*. ¶ 12. The Parties subsequently informed the Court on November 27, 2018 that they had reached a settlement agreement and requested that the case be stayed pending the filing of a motion for preliminary approval. ECF No. 284. The Court then set a schedule for preliminary approval proceedings, later granting the Parties' motion for extension of time and resetting the preliminary approval proceedings for April 10, 2019. ECF Nos. 285; 294; 295.

While developing the case and through the process of settlement negotiations, Class Counsel expended a substantial amount of time investigating the legal issues and financial risks associated with this case. Handorf Decl. ¶ 15. This investigation included, *inter alia:* (a) inspecting, reviewing and analyzing documents produced by Defendants or otherwise relating to Defendants' business structure and financial condition; (b) researching the applicable law with

respect to the claims asserted in the Complaint and the defenses and potential defenses thereto, including liability for failing to obtain insurance from the Pension Benefit Guaranty Corporation ("PBGC"); (c) inspecting, reviewing and analyzing documents concerning the Plan and administration of the Plan; and (d) researching and analyzing governmental and other publicly-available information concerning Defendants and the Plan. *Id.*

The Settlement Agreement now before the Court is a comprehensive agreement executed by all Parties on April 9, 2019. *See* Ex. 1. As the chronology above demonstrates, the Settlement is the result of extensive arm's-length negotiations between the Parties, supervised by a neutral third party. Handorf Decl. ¶¶ 8, 14. The process was thorough, adversarial, and professional. *Id.*

**B.        Overview of the Settlement Agreement**

The principal terms of the Settlement Agreement are summarized below. *See* Ex. 1.

**1.        Monetary Consideration**

The Settlement provides for a $4 million payment into an escrow account (the "Settlement Payment"), and the entire Settlement Payment will be put into the escrow account within three business days after the Court enters a final order approving the Settlement Agreement, and that order becomes final.[4] Ex. 1 § 8.1.2. That Payment—less the award of Plaintiffs' attorneys' fees and expense reimbursements, and incentive awards to Named Plaintiffs—will then be distributed to members of the Class. *Id.* §§ 8.1.2, 8.1.3, 8.1.4.

**2.        Liquidation and Termination of the Plan**

The Plan was liquidated and terminated by SAMC in March 2012. Ex. 1 § 1.22.

---

[4] "Final" is defined in the Settlement Agreement as: "with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand." Ex. 1 at § 1.13.

**3.** **Certification of a Rule 23 Class**

The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) or (b)(2). Ex. 1 § 3.2.2. The Settlement Class is defined as: "All Plan participants or Plan beneficiaries who received or were issued a reduced benefit distribution from the Plan in 2012, after the Plan's termination on March 31, 2012. Excluded from the class are the Individual Defendants named in the Complaint." *Id.* § 1.31.

**4.** **Releases**

The Settlement Agreement provides for releases by and among Plaintiffs, Defendants, and certain other non-parties (such as affiliates, insurers, counsel, and Plan fiduciaries) related to the litigation. *Id.* §4. The persons to be released by Plaintiffs are defined as the "Releasees" and enumerated at § 1.26 of the Settlement Agreement. Ex. 1 § 1.26. The Releasees will be released from the "Released Claims," which generally include all claims that could have been asserted by Plaintiffs, arising under federal or state law, related to the sponsorship, funding, maintenance, operation or termination of, or distributions from, the Plan. *Id.* § 4.1. Plaintiffs, the Settlement Class, and Class Counsel will be released from claims relating to the institution and prosecution of this case. *Id.* § 4.2.

**5.** **Notice**

The draft [Proposed] Preliminary Approval Order, attached as Exhibit 2, provides for the following proposed Class Notice Program: (a) a class notice ("Class Notice"), sent to the last known address of members of the Settlement Class and (b) an internet publication of the Settlement Agreement and Class Notice at www.cohenmilstein.com/SAMCsettlement and www.kellersettlements.com. *See* Ex. 2; *see also* Ex. 3 (Class Notice). Plaintiffs will pay the costs for notice and other distribution expenses to the Settlement Class. Ex. 1 at § 10.15.

**6.** **Attorneys' Fees, Costs and Incentive Awards**

Plaintiffs' Counsel will seek district court approval to receive an amount not to exceed $1 million of the Settlement Payment as attorneys' fees ("Attorney's Fees Award"), which will include Class Counsel's out of pocket costs. Ex. 1 § 8.1.4. Plaintiffs' Counsel also intend to ask the Court to award incentive fees to the Named Plaintiffs of $15,000 each, to be deducted from the Attorney's Fees Award, in light of their substantial contributions to the litigation, including: collecting and producing documents; participating in discovery; being deposed; maintaining regular contact with Class Counsel; reviewing and approving multiple Complaints; submitting multiple declarations to the Court; staying abreast of settlement negotiations; and advising on the settlement of this litigation. *Id.*; Handorf Decl. ¶ 21. The Settlement Class shall be notified of these details in the Class Notice. *See* Ex. 3. The attorneys' fees, expenses and incentive awards will be deducted from the amount in escrow and will be distributed to Class Counsel. Ex. 1 at §§ 8.1.2, 8.1.4.

**C.** **Reasons for the Settlement**

Plaintiffs have entered into the Settlement Agreement with an understanding of the strengths and weaknesses of their claims. In reaching this agreement, Class Counsel and Plaintiffs have considered, among other things, the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the TAC; the ability of Defendants to withstand judgment; and the benefit accruing to the Class members under the Settlement. Handorf Decl. ¶ 20. They have also considered Defendants' financial condition; reviewed documents produced by Defendants; assessed the range of possible recovery; and considered the significant uncertainties in predicting the outcome of this litigation either on Plaintiffs' ERISA claims or state law claims. *Id.*; *see also* Ex. 1 at §§ 2.2-2.3, 2.7.

Having weighed these factors, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and in the best interests of the Settlement Class, and should be presented to the Court for approval. Handorf Decl. ¶ 20.

### III.    DISCUSSION

**A.**        **The Standards for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits. It provides that "the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Approval under Rule 23(e) involves a two-step process: first, a "preliminary approval" order; and second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment.[5] *See MANUAL FOR COMPLEX LITIGATION* § 13.14 (4th ed. 2016). Rule 23(e) further provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given to class members in the manner directed by the court, a hearing must be held, and judicial approval must be obtained.

In determining whether to *preliminarily* approve a settlement, the Court is not charged with engaging in the rigorous analysis of the Settlement Agreement required for *final* approval, but rather conducts a preliminary review to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on*

---

[5] A [Proposed] Order and Final Judgment is attached as Ex. 4 to this memorandum.

*other grounds*, *Felsen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). As a prominent treatise explains:

> At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval…. In evaluating a settlement for preliminary approval, the court determines whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval…. After a preliminary determination as to the fairness of a proposed settlement, the court must direct notice to class members and hold a final fairness hearing before formally approving the settlement.

David F. Herr, Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012); *see also McCue v. MB Fin., Inc.,* No. 1:15-cv-00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) (Coleman, J.) ("At the preliminary approval stage, the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval'").

    This low threshold acknowledges that the *final* approval hearing is the stage at which courts "adduce all information necessary to enable [them] intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate.'" *Armstrong*, 616 F.2d at 314 (citing *MANUAL FOR COMPLEX LITIGATION* (rev'd ed.) § 1.46, at 57).[6] At preliminary approval, a court's role does not entail "resolving the merits of the controversy or making a precise

---

[6] At the Final Approval Hearing, the Court has the discretion under Rule 23(e) to finally approve the Settlement if the Court finds it to be fair, adequate, and reasonable to the Class. The Seventh Circuit has set forth an eight-factor test to determine the fairness of a class action settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the degree of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *See Armstrong*, 616 F.2d at 314 (quoting 3B Moore's Federal Practice ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1149-50 (N.D. Ill. 1997); *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314 (N.D. Ill. 1993).

determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (collecting cases). A settlement does necessarily require a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)). An evaluation of the costs and benefits of settlement must also be tempered by the recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Finally, it is well-established that there is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (discussing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). In *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995), Judge Guzman recognized:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.

*Id*. at *1 (citations and quotation marks omitted); *see also Hispanics United*, 988 F. Supp. at 1149 ("Compromise is particularly appropriate in complex class actions.").

**B.** **This Settlement Is Within the Range of Reasonableness Justifying Preliminary Approval**

Applying these principles, the Settlement Agreement easily meets the "range of reasonableness" test for preliminary approval, particularly in light of the strong public policy in favor of settling class actions. The Settlement Agreement is appropriate for proceeding to notice the class and a final fairness hearing: it was reached after extended and contentious negotiations involving the parties, their counsel, and other professionals, assisted by a skilled mediator; it takes into account the risks of litigation and the financial circumstances of the Defendants; it promptly provides valuable benefits to the Settlement Class; it proposes reasonable limits on attorney compensation and incentive fees; and it does not prefer any Settlement Class members over others.

**1.** **The Settlement Provides Certain Relief and Eliminates the Uncertainty of Prevailing on the Merits**

The TAC alleges that the Plan was underfunded by $32 million. TAC ¶ 8. The $4 million payment provided for in the Settlement Agreement includes a net distribution to the Settlement Class (after deducting attorneys' fees, expenses, and incentive awards) of $3 million. The Settlement thus promptly increases the amounts the members of the Settlement Class receive on account of their accrued pension benefits, while mitigating the risks and uncertainty of litigation.

This risk mitigation is significant, particularly in light of the fact that during the pendency of this case, the Supreme Court ruled against the employee plaintiffs in a similar case, holding that a church plan need not be established by a church. *Advocate Healthcare Network v. Stapleton*, 137 S. Ct. 1652 (2017); Ex. 1 §§ 2.2; Handorf Decl. ¶ 11. Afterwards, Plaintiffs maintained their ERISA claims under an alternative theory and constitutional claim, and amended their complaint to add state law claims, but their case was arguably weakened by

10

the Supreme Court decision. Handorf Decl. ¶ 20. Accordingly, the Settlement eliminates significant risk for all Parties.

### 2. Class Counsel Endorse the Settlement

Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See, e.g.*, *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 325 (In determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel."). Here, Class Counsel—two law firms that are nationally recognized for their expertise in employee benefits law and church plan litigation—believe that this Settlement is fair, reasonable, and adequate in light of the circumstances in this case. Handorf Decl. ¶¶ 17-20.

Their conclusion is the product of extensive, informed, arm's-length negotiations. Handorf Decl. ¶ 8. The Parties' negotiations were overseen by an experienced mediator, Robert Meyer, who has mediated many ERISA and retirement plan cases, including cases contesting the applicability of the church plan exemption. *Id*. Class Counsel relied on Mr. Meyer's proposal for achieving settlement after considering all relevant factors. *Id. ¶* 12.

Moreover, Class Counsel has deep familiarity with the factual and legal issues of this case and the risks associated with continued litigation. *Id. ¶¶* 16-19. Cohen Milstein and Keller Rohrback, the firms acting as Class Counsel, represented the plaintiffs-respondents before the Supreme Court in *Advocate*, 137 S. Ct. 1652 (2017), as well as in the three church plan cases in the Court of Appeals—the Third, Seventh, and Ninth Circuits. *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015); *Stapleton v. Advocate Healthcare Network*, 817 F.3d 517 (7th Cir. 2016); *Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir. 2016); Handorf Decl. ¶ 18. Moreover, Class Counsel have handled at least twenty church plan cases nationwide

11

and are familiar with the strength of the cases, the risks involved, and the particular facts of this case.

Finally, it is well-recognized that named plaintiffs are entitled to an incentive award to induce them to participate in the lawsuit. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041-42 (N.D. Ill. 2011) (collecting cases) (noting the mean incentive fee is approximately $16,000). Such enhancements compensate class representatives for their time, effort, and willingness to play an active role if the parties continued litigating through trial. *Id.*; *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Here, each of the Named Plaintiffs made substantial contributions to the litigation, including: collecting and producing documents; maintaining regular contact with Class Counsel; reviewing and approving three complaints; submitting declarations to the court; sitting for depositions; staying abreast of settlement negotiations; and advising on the settlement of this litigation. Handorf Decl. ¶ 21. These actions provided great benefit to the members of the Settlement Class and thus the requested awards to Named Plaintiffs are appropriate. *See id.*

At this juncture, the Court need not consider the ultimate question: whether the proposed Settlement is fair, reasonable, and adequate. However, preliminary consideration of factors considered by courts in this Circuit in granting final approval lends support to Plaintiffs' belief that this settlement is well "within the range of possible approval." *Armstrong*, 616 F.2d at 310. For this and all the foregoing reasons, the Court should preliminarily approve the Settlement.

**C.      The Proposed Class Satisfies the Requirements for Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure.**

Plaintiffs request that the Court preliminarily certify the Class for settlement purposes only, under Federal Rule of Civil Procedure 23(a) and 23(b)(1) and (2). As set forth above, the

Class is defined as "All Plan participants or Plan beneficiaries who received or were issued a reduced benefit distribution from the Plan in 2012, after the Plan's termination on March 31, 2012. Excluded from the class are the Individual Defendants named in the Complaint." Plaintiffs also move the Court to preliminarily appoint Cohen Milstein Sellers & Toll PLLC and Keller Rohrback L.L.P. as Class Counsel.

### 1. Provisional Certification of the Settlement Class is Appropriate

A settlement class must meet the requirements for class certification under Rule 23(a) (numerosity, commonality, typicality, and adequacy). *In re: Sears, Roebuck & Co.*, 2016 WL 772785, at *8. These requirements readily are satisfied here.

*Numerosity.* The first requirement, numerosity, "is typically satisfied where there are at least forty members of a putative class." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (citation omitted); *see also Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 427 (N.D. Ill.), *modified*, 242 F.R.D. 434 (N.D. Ill. 2007) ("permissive joinder is usually deemed impractical where the class members number 40 or more"). Here, Plaintiffs allege that, as of July 1, 2010, the Plan had a total of 1,923 participants (TAC ¶ 217). Plaintiffs further allege that, as a result of the underfunding of the Plan, all participants and beneficiaries suffered reductions in pension benefits under the Plan at the time it was terminated. *Id.* As all of the participants and beneficiaries are members of the Class, the Class is so numerous that joinder of all members is impracticable.

*Commonality.* The commonality requirement set forth in Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." *See Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) ("Commonality requires that there be at least one question of law or fact common to the class.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The common questions of law and fact here

include, for example: (1) whether the Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA; (3) whether the fiduciaries of the Plan improperly terminated the Plan without complying with the requirements of ERISA; (4) whether as a consequence of the failure to properly terminate the Plan, Defendants continue to be liable for payment of unfunded benefits due to the participants under the Plan and unpaid minimum funding contributions, 29 U.S.C. §§ 1362, 1364; and (5) if the Plan is not subject to ERISA, whether Defendants are liable for breach of contract, negligence, or common law breach of fiduciary duty. *See Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 349 (N.D. Ill. 2007) (finding that "because plaintiffs' claims derive from defendants' actions (or inactions) with respect to the Plan, plaintiffs have demonstrated that their claims involve a common nucleus of operative fact" and therefore that the putative ERISA class met the commonality requirement).

*Typicality.* Plaintiffs' claims are typical of Class Members' claims because all claims are based on Defendants' alleged wrongful conduct, and all members of the Class were similarly affected by such conduct. The requirement of typicality is therefore satisfied. *See Rosario*, 963 F.2d at 1018 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory") (internal quotation marks omitted); *see also Brieger*, 245 F.R.D. at 350 (finding that typicality is met where a putative ERISA class "seek[s] relief on behalf of the plan…for alleged fiduciary violations as to the Plan").

*Adequacy.* Rule 23 also "requires that the representative parties fairly and adequately represent the class. A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id* at 355. Here, Plaintiffs Owens, Jewett, Buksar, and

Snyder, as the proposed class representatives, adequately represent the Class, as their claims are typical of the claims of the other members of the Class. Their claims, like the claims of the other Class members, arise from the same event, practice and/or course of conduct—namely, Defendants' failure to maintain the Plan in accordance with ERISA or alternatively in breach of their contractual, fiduciary, and other obligations which arise under state law. Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' conduct, and all Class members seek the same relief on behalf of the plan. *Brieger*, 245 F.R.D. at 356 (where a putative ERISA class "bring[s] claims on behalf of the Plan, not for individual relief . . . there is no inherent conflict between the claims of the named plaintiffs and those of the putative class" and the named plaintiffs satisfy the "adequacy" requirement).

### 2. The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2).

#### a. Rule 23(b)(1): Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members.

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant or would, as a practical matter, be dispositive of the interest of absent members. Fed. R. Civ. P. 23(b)(1)(A) and (B).

There is a clear risk of inconsistent adjudication and incompatible standards here: in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plan is an ERISA-regulated plan and the other holding that it is not. *See, e.g.*, *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) ("ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure

to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole (as it is here), a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs"). Courts in this District have certified classes under Federal Rule of Civil Procedure 23(b)(1) in ERISA cases for those very reasons. *Id.* ("Numerous ERISA actions in this district have been certified under 23(b)(1)") (collecting cases).

Moreover, the Advisory Committee Notes on Rule 23 specifically acknowledge that actions which "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries"—*i.e.*, an action like the present action –"should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment. As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA action.

     **b.**    **Rule 23(b)(2): Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate.**

A class also may be certified under Federal Rule of Civil Procedure 23(b)(2) if it satisfies Rule 23(a)(1) and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis.

Specifically, Plaintiffs allege that the Plan was terminated in March 2012, at a time when its assets were insufficient to pay all accrued benefits to participants and beneficiaries. Plaintiffs allege that participants and beneficiaries of the Plan have received partial payment—the Class members were given either a 30 or 40% reduction of their accrued benefits, as calculated by or at

16

the direction of SAMC, after the termination, depending on whether they picked a lump sum payout or annuity.

In summary, Plaintiffs allege in the TAC that Defendants (a) violated ERISA's reporting and disclosure provisions under §§ 101-105; (b) failed to adhere to ERISA's required minimum funding standards for the Plan under ERISA § 302; (c) failed to establish the Plan pursuant to a written instrument meeting the requirements of ERISA § 402; (d) failed to establish a trust meeting the requirements of ERISA § 403; (e) violated ERISA's anti-cutback provision under § 204(g); and (f) failed to terminate the Plan in compliance with ERISA § 4041. Plaintiffs allege that Defendants breached fiduciary duties owed to the Plan's participants and beneficiaries, including Plaintiffs, pursuant to ERISA §§ 404(a)(1), 406(a)(1), and 406(b)(1). Plaintiffs further allege that the Church Plan exemption, as claimed by Defendants, violates the Establishment Clause of the First Amendment of the United States Constitution. Plaintiffs also allege that Defendants failed to obtain pension insurance from the PBGC, as required by ERISA § 4022. Finally, Plaintiffs claim that Defendants are liable for the $32 million in underfunding, pursuant to ERISA §§ 302(a), 302(b)(2), and 4062. Plaintiffs alternatively allege claims under state law, including breach of contract, breach of Defendants' common law fiduciary duties, and negligence.

Although Defendants deny the allegations of the TAC and contend that defenses exist for every claim, each of Plaintiffs' allegations, if proven, would establish harm to the entire class as a whole. As a result, certification of the proposed class under Rule 23(b)(2) is also appropriate in this ERISA action.

**D.** **Rule 23(g) Is Satisfied.**

Federal Rule of Civil Procedure 23(g) requires that the Court examine the capabilities and resources of class counsel. Class Counsel has detailed the claims that they developed and brought in this action, and the more than four years of time and effort already expended in connection with this litigation. Moreover, Class Counsel are among the leading litigators of ERISA actions on behalf of plaintiffs, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Handorf Decl. ¶¶ 17-19. Class Counsel have handled numerous church plan cases, including those in front of the Supreme Court. *Id.* Class Counsel thus satisfy the requirements of Rule 23(g).

**E.** **The Proposed Notice Program Satisfies the Due Process Requirements of Rule 23.**

In order to satisfy due process considerations, and pursuant to Rule 23(c)(2), notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Here, the proposed Class Notice Program describes in plain English the Settlement; the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate; the maximum attorneys' fees and expenses, and Incentive Payment Awards to Named Plaintiffs that may be sought; the procedure for objecting to the Settlement; and the date and place of the Fairness Hearing. *See* Ex. 3.

With the Court's approval, the Class Notice, attached as Exhibit 3, will be mailed to each member of the Settlement Class by first class mail, no later than 60 days prior to the Fairness Hearing. The Class Notice is designed to command the attention of Class members, provides summarized information about the Settlement, and directs Class Members to either of two

18

websites (www.cohenmilstein.com/SAMCsettlement and/or www.kellersettlements.com) where the Settlement Agreement may be viewed and downloaded. This Notice Program will fairly apprise Class Members of the Settlement Agreement and their options with respect thereto, and therefore fully satisfy due process requirements. *See Newberg on Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33 (5th ed. 2014).

The proposed Notice Program fulfills the requirements of due process because it alerts and informs those Settlement Class Members who can be identified through reasonable efforts of all of the information set forth above. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) (mailing notice to the class was sufficient); *Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2001) (same); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (same).

**F.**         **Proposed Schedule**

The Parties have agreed to the following set of deadlines, the specific dates of which will be determined after the Court enters the Preliminary Approval Order and sets a Fairness Hearing date:

| Event | Time for Compliance |
|---|---|
| Deadline for CAFA Notice | No later than 10 days after the Settlement Agreement is filed with the Court |
| Deadline for Mailing of Class Notice and Posting Class Notice to Website | No later than 60 days prior to the Proposed Fairness Hearing |
| Deadline for Filing Plaintiffs' Motion for Final Approval, Attorneys' Fees and Expenses, and Incentive Fees for Plaintiffs | 45 days prior to the Proposed Fairness Hearing |
| Deadline for the Settlement Class to Comment upon or Object to the Proposed Settlement | 28 days prior to the Proposed Fairness Hearing |
| Deadline for Filing Plaintiffs' Reply in Support of Motion for Final Approval, Attorneys' Fees and Expenses, and Incentive Fees for Named Plaintiffs, and for the Parties to Respond to Any Comments or Objections | 7 days prior to the Proposed Fairness Hearing |
| Proposed Fairness Hearing | 110 days from entry of the Preliminary Approval Order[7] |

## IV.  CONCLUSION

Class Counsel respectfully request that the Court grant Plaintiffs' motion and (i) enter the proposed Preliminary Approval Order, which provides for notice to the Class as described herein, and (ii) set a Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for award of attorneys' fees and expenses and for incentive awards for Named Plaintiffs; and (b) file their motion for final approval of the proposed Settlement.

---

[7] Pursuant to the U.S. Class Action Fairness Act of 2005, 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

DATED this 10th day of April, 2019.

By: _/s/ Jamie Bowers_____
    Jamie Bowers

Karen L. Handorf
Julie G. Reiser
Julie Selesnick
Jamie Bowers
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email: khandorf@cohenmilstein.com
jreiser@cohenmilstein.com
jselesnick@cohenmilstein.com
jbowers@cohenmilstein.com

Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL, PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370 / Fax: (312) 357-0369
ARDC No.: 6185530
Email: cgilden@cohenmilstein.com

Lynn L. Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email: rkilgard@kellerrohrback.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on April 10, 2019, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all counsel of

record.

s/ Jamie Bowers
Jamie Bowers