# Exhibit 1

*Owens, et al. v. St. Anthony Medical Center, et al.*
Settlement Agreement, April 9, 2019

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs, as defined in § 1.19 below, on the one hand, and Defendants, as defined in § 1.8 below, on the other. Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1. DEFINITIONS

1.1. "*Action*" shall mean: *Owens, et al. v. St. Anthony's Medical Center, et al.*, No. 14-4068, an action pending in the United States District Court for the Northern District of Illinois.

1.2. "*Church Plan*" shall mean: a plan which meets the definition of a "church plan" under ERISA § 3(33), 29 U.S.C. § 1002(33) and Section 414(e) of the Internal Revenue Code of 1986, as amended.

1.3. "*Class Counsel*" shall mean: Cohen Milstein Sellers & Toll PLLC and Keller Rohrback L.L.P.

1.4. "*Class Notice*" shall have the meaning provided in § 3.2.3.

1.5. "*Class Settlement Amount*" shall have the meaning set forth in § 8.1.1.

1.6. "*Complaint*" shall mean: the Third Amended Class Action Complaint filed in the Action on December 4, 2017.

1.7. "*Court*" shall mean: The United States District Court for the Northern District of Illinois.

1.8. "*Defendants*" shall mean: St. Anthony Medical Center, Inc. ("SAMC"); the Franciscan Sisters of Chicago Service Corporation, including any and all predecessors in interest, successors in interest, and parent, subsidiary and/or affiliated entities (collectively "FSCSC"); the Board of Directors of FSCSC ("Board"); Franciscan Communities, Inc. ("FCI"); Franciscan Holding Corporation ("FHC"); Franciscan Alliance, Inc., including any and all predecessors in interest, successors in interest, and parent, subsidiary and/or affiliated entities (collectively "FAI"); the SAMC Retirement Committee ("Committee"); and the following individuals (collectively, the "*Individual Defendants*"): Donna Gosciej; Linda Hornyak; Leonard Wychocki; Walter Garbarczyk; Julie Secviar; Chester Labus; Sister Helene Galuszka; Sister M. Francis Clare Radke; Sister M. Francine Labus; Annette Shoemaker; Jill Krueger; Lawrence Leaman; Sandra Singer; Susan Nordstrom Lopez; and John and Jane Does 1-40, inclusive.

1.9. "*Effective Date*" or "*Effective Date of Settlement*" shall mean: the date on which all of the conditions to settlement set forth in § 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

*Owens, et al. v. St. Anthony Medical Center, et al.*
Settlement Agreement, April 9, 2019

1.10. *"ERISA"* shall mean: the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended, including all regulations promulgated thereunder.

1.11. *"Escrow Account"* shall mean: the account, as detailed in Exhibit A to this Settlement Agreement, into which Defendants will cause $4 million to be initially deposited.

1.12. *"Fairness Hearing"* shall have the meaning provided in § 3.2.5(a).

1.13. *"Final"* shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.14. *"Final Approval Motion"* shall have the meaning provided in § 3.2.6.

1.15. *"Final Approval Order"* shall have the meaning provided in § 3.2.5(a).

1.16. *"Judgment"* shall have the meaning provided in § 3.2.5(a).

1.17. *"Party"* or *"Parties"* shall mean the Plaintiffs and Defendants, either individually or collectively.

1.18. *"Person"* shall mean: an individual, partnership, corporation or any other form of organization.

1.19. *"Plaintiffs"* and *"Named Plaintiffs"* shall mean: Lenore Owens, Jean Jewett, Lori Buksar, and Julia Snyder.

1.20. *"Plan"* shall mean: the St. Anthony Medical Center Retirement Plan.

1.21. *"Plan Payment"* shall have the meaning set out in § 8.1.2.

1.22. *"Plan Termination"* shall mean Defendants' purported termination of the Plan in March 2012, which caused the Plan to distribute benefits in May 2012.

1.23. *"Preliminary Approval Motion"* shall have the meaning provided in § 3.2.1.

1.24. *"Preliminary Approval Order"* shall have the meaning provided in § 3.2.1.

1.25. *"Released Claims"* shall have the meaning provided in § 4.1.

1.26. *"Releasees"* shall mean: all Individual Defendants, SAMC, FSCSC, the Committee, the Board, FCI, FHC, FAI, all Affiliates of SAMC (defined as any entity controlling, controlled by,

2

or under common control of or with SAMC), all Affiliates of FAI (defined as any entity controlling, controlled by, or under common control of or with FAI), all entities that are considered to be a single employer for purposes of the Plan under IRC § 414, and all former and current directors, officers, Plan Committee members (including members of any similar committee with a different name but with fiduciary and/or administrative responsibility for the Plan), employees, representatives, agents, counsel, other Plan fiduciaries, and insurers of any of the previous entities (for clarity, SAMC, FSCSC, FCI, FHC, FAI, all Affiliates of SAMC, all Affiliates of FAI, and all entities that are considered to be a single employer for purposes of the Plan under IRC § 414).

1.27. *"Representatives"* shall mean: representatives, attorneys, agents, directors, officers, employees, insurers, and reinsurers.

1.28. *"SAMC"* shall mean St. Anthony Medical Center, a not for profit corporation organized in Indiana.

1.29. *"Settlement"* shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.30. *"Settlement Agreement"* shall mean this Class Action Settlement Agreement entered into by and between Plaintiffs and Defendants.

1.31. *"Settlement Class"* shall mean: All Plan participants or Plan beneficiaries who received or were issued a reduced benefit distribution from the Plan in 2012, after the Plan's termination on March 31, 2012. Excluded from the class are the Individual Defendants named in the Complaint.

1.32. *"Successor-In-Interest"* shall mean: a Person's estate, legal representatives, heirs, successors, or assigns, and any other Person who can make a legal claim by or through such Person.

2. RECITALS

2.1. Plaintiffs allege and seek declaratory relief against Defendants that the Plan is not a Church Plan within the meaning of ERISA § 3(33) and thus is subject to the provisions of Title I and Title IV of ERISA. Plaintiffs allege that the Plan was purportedly terminated as of March 30, 2012, at a time when its assets were insufficient to pay all accrued benefits to beneficiaries. In the Complaint, Plaintiffs allege that Defendants (a) violated ERISA's reporting and disclosure provisions under §§ 101-105; (b) failed to adhere to ERISA's required minimum funding standards for the Plan under ERISA § 302; (c) failed to establish the Plan pursuant to a written instrument meeting the requirements of ERISA § 402; (d) failed to establish a trust meeting the requirements of ERISA § 403; (e) violated ERISA's anti-cutback provision under § 204(g); and (f) failed to terminate the Plan in compliance with ERISA § 4041. Plaintiffs allege that Defendants breached fiduciary duties owed to the Plan's participants and beneficiaries, including Plaintiffs, pursuant to ERISA §§ 404(a)(1), 406(a)(1), and 406(b)(1). Plaintiffs further allege that the Church Plan exemption, as claimed by Defendants, violates the Establishment Clause of the First Amendment

of the United States Constitution. Plaintiffs also allege that Defendants failed to obtain pension insurance from the Pension Benefit Guaranty Corporation ("PBGC"), as required by ERISA § 4022. Plaintiffs claim that Defendants are liable for the $32 million in underfunding, pursuant to ERISA §§ 302(a), 302(b)(2), and 4062. Finally, Plaintiffs have alleged alternative state law claims, claiming breach of contract, unjust enrichment, common law breach of fiduciary duty, and negligence. Defendants deny each and every allegation of the Complaint and believe substantial and meritorious defenses exist for every claim alleged by Plaintiffs. The Parties have agreed that neither this Settlement Agreement, nor any provision hereof, nor any act in furtherance of its implementation shall be construed as acquiescence by Defendants, or any of them, in the legal claims or factual assertions advanced in the Action, or as any admission or wrongdoing.

2.2. The Supreme Court held that a church plan did not need to be established by a church in *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017). The decision eliminated one of Plaintiffs' threshold arguments in this case—that the Plan was not a church plan because it was not established by a church. Plaintiffs' operative complaint asserted alternative arguments that plans sponsored by hospital systems are not "maintained" by principal-purpose organizations as defined in 29 U.S.C. §§ 1002(33)(C)(i). *Id.* at 1657-58 nn. 2-3.

2.3. This is an exceedingly complex, multi-defendant case which will require the Parties and the Court to expend significant time and resources to litigate to a final judgment on the merits. Recognizing this, the Parties sought an early resolution of this matter and engaged in mediation discussions before a nationally-known mediator, Robert A. Meyer, of JAMS.

2.4. The Parties began settlement negotiations in September 2016, through a mediation which proved unsuccessful. From August 2018 through November 2018, the Parties renewed settlement efforts and interacted with the mediator on numerous occasions but were unable to negotiate a settlement until the mediator put forth a "mediator's proposal" which both sides accepted.

2.5. Defendants desire to resolve fully and settle with finality the Action and all of Plaintiffs' Released Claims for themselves, the Settlement Class, the Releasees, and the Plan, thereby avoiding the risk, expense, inconvenience, burden, distraction and diversion of their personnel and resources, and uncertainty of outcome that is inherent in any litigation, associated with the Action.

2.6. Class Counsel has conducted an extensive investigation into the facts, circumstances and legal issues associated with the allegations made in the Action. This investigation has included, *inter alia:* (a) researching the applicable law with respect to the claims asserted in the Action and the defenses and potential defenses thereto; (b) inspecting, reviewing and analyzing documents concerning the Plan and administration of the Plan; (c) researching and analyzing governmental and other publicly-available information concerning the Defendants, the Plan, and the relevant industry; and (d) participating in a full day of in-person settlement negotiations followed by months of ongoing settlement communications with Defendants' counsel, presided over by mediator Robert Meyer, Esq.

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

2.7. Class Counsel believes that the Settlement will provide a substantial benefit to the Settlement Class, and that, when that benefit is weighed against the attendant risks of continuing the prosecution of the Action as well as Defendants' ability to satisfy a judgment even if Plaintiffs were to prevail, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class. In reaching this conclusion, Class Counsel has considered, among other things, the ability of Defendants to withstand a judgment; the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaint; and the benefit accruing to the Plan's participants under the Settlement.

2.8. Plaintiffs and Defendants have thus reached this Settlement by and through their respective counsel on the terms and conditions set forth herein, which they have had a full and meaningful opportunity to consider with the advice of their respective counsel.

2.9. Plaintiffs have agreed to this Settlement based on the representations of FSCSC that there is no insurance agreement that provides coverage for Plaintiffs' claims that would permit a higher Settlement Payment.

2.10. Defendants contend that nothing in this Settlement Agreement should be construed as an agreement that the Plan is not properly treated as a Church Plan or that the Plan is subject to ERISA. Plaintiffs contend that nothing in the Term Sheet and/or this Settlement Agreement should be construed as an agreement that the Plan is properly treated as a Church Plan or that the Plan is not subject to ERISA. Notwithstanding these differences between the Parties, they agree jointly to the conditions set forth in this Settlement Agreement.

3. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT

3.1. *Effectiveness of This Settlement Agreement.* This Settlement Agreement shall not become binding unless and until every one of the following conditions in §§ 3.2 through 3.8 shall have been satisfied.

3.2. *Court Approval.* The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 3.2. The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

    3.2.1 *Motion for Preliminary Approval of Settlement and of Notices.* The Court shall have approved the preliminary approval motion ("Preliminary Approval Motion") to be filed by Plaintiffs, and the Court shall have issued an order (the "Preliminary Approval Order"), including a class notice to be agreed upon by the Parties (the "Class Notice"):

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

---

    (a)    Preliminarily approving this Settlement Agreement;

    (b)    Directing the time and manner of the Class Notice; and

    (c)    Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

3.2.2 *Class Certification.*

    (a)    The Court shall have certified the Action as a non-opt-out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Cohen Milstein Sellers & Toll PLLC and Keller Rohrback L.L.P. as Class Counsel, and with the Settlement Class as defined above.

    (b)    The Parties agree to stipulate to certification of the action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of November 27, 2018.

    3.2.3  *Issuance of Class Notice*. On the date and in the manner set by the Court in its Preliminary Approval Order, SAMC will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost-effective forms of notice. The Parties agree that the Preliminary Approval Order shall provide that the last known addresses for members of the Settlement Class in FSCSC's possession will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice.

    3.2.4  *Internet/Publication of Class Notice*. Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on www.cohenmilstein.com/SAMCsettlement and http://www.kellersettlements.com.

    3.2.5  *The Fairness Hearing.*

(a) On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing") during or after which the Court will determine by order (the "Final Approval Order") whether: (i) this Settlement Agreement is fair, reasonable and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award attorneys' fees and further expenses to Class Counsel and if so, the amounts; and (vii) to authorize incentive awards to the Named Plaintiffs.

(b) The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

3.2.6 *Motion for Final Approval of Class Action Settlement*. On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

3.3. *Finality of Final Approval Order*. Subject to § 8.1.4, the Final Approval Order shall have become Final, as defined in § 1.13 of this Settlement Agreement.

3.4. *Compliance with the Class Action Fairness Act*. The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

3.5. *Dismissal of Action*. The Action shall have been dismissed with prejudice as against all Defendants on the Effective Date of Settlement.

3.6. *No Termination*. The Settlement shall not have terminated pursuant to § 9 below.

3.7. *Materiality of Settlement Agreement Conditions*. The Parties expressly acknowledge that the effectiveness of this Settlement Agreement is specifically conditioned upon the occurrence of each and every one of the foregoing conditions precedent prior to the Effective Date of Settlement, and that a failure of any condition set forth in §§ 3.1 through 3.8 at any time prior to the Effective

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

Date of Settlement shall make this Settlement Agreement, and any obligation to pay the amounts specified in § 8.1, or any portion thereof, null, void, and of no force and effect.

3.8.  *Establishment of Effective Date of Settlement.* If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 3 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert A. Meyer, the Parties' mediator, who shall retain jurisdiction for this purpose. Attorneys' fees and costs associated with any such resolution shall be allocated by the mediator. No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute pending the Court's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

4.  RELEASES AND COVENANT NOT TO SUE

4.1.  *Released Claims.* Any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Complaint in connection with the sponsorship, administration, funding (or alleged lack thereof), reporting, disclosure, participant notification, maintenance, operation or termination of, or distributions from, the Plan, that were brought or could have been brought under federal law or state law as of the date of this Settlement Agreement by any member of the Settlement Class, including any current or prospective challenge to the "church plan" status of the Plan. Released Claims do not include: release of the claims described in paragraph 4.1.2; the release of any obligation under this Settlement Agreement; and the release of any claim that a class member's final distribution benefit described in this Settlement Agreement is inconsistent with the same actuarial assumptions and methodologies used for the Plan distributions that occurred in May 2012.

    4.1.1  *Release by Named Plaintiffs and Settlement Class.* Subject to § 9 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class have or may have. The Settlement Class covenants and agrees: (i) not to file against any Released Party any claim based on, related to, and/or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Released Party.

    4.1.2  *Franciscan Alliance Litigation Claims Not Released.* The Release *does not* affect any claims being litigated against Defendant Franciscan Alliance in the matter *Cappello v. Franciscan Alliance*, No. 3:16-cv-00290 (N.D. Ind.). Defendant Franciscan Alliance is only released as to any and all of the claims with respect to the SAMC Plan.

4.2.  *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Subject to § 9 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

8

*Owens, et al. v. St. Anthony Medical Center, et al.*
Settlement Agreement, April 9, 2019

4.3. *Releasees' Release of Other Releasees.* Subject to § 9 below, upon the Effective Date of Settlement, each of the Releasees also releases each of the other Releasees from any and all claims arising specifically out of this cause of action and the related transactions, including both those which were asserted and those which would have been required to be asserted in the Action or that would be barred by principles of res judicata or collateral estoppel had the claims asserted been fully litigated and resulted in a Final judgment or order.

5. COVENANTS

Named Plaintiffs, on their own behalf and on behalf of the members of the Settlement Class, the Plan, and Defendants, hereby covenant as follows:

5.1. *Taxation of Settlement Payments.* The Parties will act in good faith to attempt to minimize adverse tax consequences of the Class Settlement Amount to the recipients. However, Plaintiffs acknowledge that Defendants, Releasees and any of their Representatives or Successors-In-Interest shall not have any responsibility for any taxes that may be due on the Class Settlement Amount, or on any funds that the Plan or members of the Settlement Class receive from the Settlement Payments. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Class Payments or any allocation or disbursement therefrom.

6. REPRESENTATIONS AND WARRANTIES

6.1. *Parties' Representations and Warranties.*

6.1.1 Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

6.1.2 Named Plaintiffs represent and warrant that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims.

6.1.3 The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; except as expressly stated herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any other Party or its Representatives; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

---

6.1.4 The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

6.2. *Signatories' Representations and Warranties.* Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal which such individual represents or purports to represent.

7. NO ADMISSION OF LIABILITY

Defendants deny any and all allegations of wrongdoing made in the Complaint. Defendants aver that the Plan was properly administered as a Church Plan as defined in Internal Revenue Code section 414(e), 26 U.S.C. § 414(e), and ERISA section 3(33), 29 U.S.C. § 3(33). This Settlement is not evidence of any liability of any type.

8. SETTLEMENT PAYMENTS

8.1. *The Class Settlement Amount.*

8.1.1 The "Class Settlement Amount" shall be exactly Four Million Dollars ($4,000,000.00). Notwithstanding any other provision(s) of this Settlement Agreement, it is expressly understood and agreed that the Class Settlement Amount is the sole and exclusive amount of monetary consideration paid by Defendants for this settlement.

8.1.2 *Plan Payment.* On behalf of Defendants, FSCSC will pay the Class Settlement Amount into the Escrow Account. Up to one million dollars ($1,000,000) of the Class Settlement amount will be used to satisfy any amounts awarded by the Court for attorney's fees, expenses, and incentive awards, as defined in § 8.1.4. The payment shall be made within three (3) business days after the Final Approval Order and Judgment becomes Final.

8.1.3 *Distribution.* The final distributions to Plan participants and beneficiaries described in §§ 8.1.1, 8.1.2, and 8.1.3, will be allocated and paid to class members based upon the same actuarial assumptions and methodologies used for the Plan Termination payments that occurred in 2012, and shall include any income generated by the funds held in the Escrow Account. Costs of distribution to the Settlement Class (including the costs of calculating the amounts of specific distributions) shall be treated as litigation costs of the Settlement Class, for which counsel may apply for reimbursement from the Class Settlement Amount. Each individual in the Settlement Class will receive a proportional share of the Class Settlement Amount based on the total reduction of their accrued benefits as of the May 2012 distribution.

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

---

8.1.4 *Attorneys' Fees and Expenses and Incentive Payment Awards.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall petition the Court for an award of attorneys' fees and costs, as specified in this § 8.1.4. Defendants expressly agree not to contest or take any position with respect to Plaintiffs' application to the Court for an award of attorney fees, out of pocket expenses, and incentive payment awards, provided that the aggregate of such awards sought by Plaintiffs shall not exceed one million dollars ($1,000,000) or 25% of the Class Settlement Amount. Plaintiffs' application for incentive payment awards shall not exceed $15,000 for each of the Named Plaintiffs. The Parties agree that Attorneys' Fees, Expenses, and Incentive Payment Awards will be paid from and deducted from the $4 million Escrow Account value described in § 8.1.2 of this Settlement Agreement. Any Incentive Payment Awards, and Class Counsel's attorneys' fees and expenses will be subject to the discretion and approval of the District Court. Such attorneys' fees and expenses as are awarded by the Court in its discretion shall be paid to Plaintiffs' Counsel within three (3) business days after the Final Approval Order and Judgment becomes Final. The procedure for and the allowance or disallowance of any application for Incentive Payment Awards, attorneys' fees and expenses are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to an award of Incentive Payment Awards, attorneys' fees and expenses, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

8.2. *Sole Monetary Contributions.* The payment provided for in § 8.1 shall be the full and sole consideration made by or on behalf of the Releasees in connection with the Action and this Settlement Agreement. The amount specified in § 8.1.4 specifically satisfies any claims for costs and attorneys' fees by Class Counsel.

9. TERMINATION OF THE SETTLEMENT AGREEMENT

9.1. *Automatic Termination.* This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

9.1.1 If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

---

9.1.2   If the Seventh Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of this Settlement Agreement as modified by the Seventh Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Seventh Circuit order referenced in this § 9.1.2.

9.1.3   If the Supreme Court of the United States reverses or remands a Seventh Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 9.1.3.

9.1.4   If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

9.2.   *Consequences of Termination of this Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

9.2.1   The Action shall for all purposes with respect to the Parties revert to its status as of November 27, 2018.

9.2.2   All Releases given or executed pursuant to this Settlement Agreement shall be null and void; none of the terms of this Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in the Action or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

9.2.3   The escrow funds and any interest generated by the funds therein revert to SAMC.

10.   MISCELLANEOUS PROVISIONS

10.1.   *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 10.1.

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

10.1.1 Prior to the Effective Date of Settlement, Robert A. Meyer, mediator in the Action, will act as the final arbiter of any disagreements as to language regarding this Settlement Agreement and exhibits thereto.

10.2. *No Limitation of Remedies.* In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs breach this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

10.3. *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Illinois law will apply without regard to conflict of law principles.

10.4. *Severability.* The provisions of this Settlement Agreement are not severable.

10.5. *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

10.6. *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

10.7. *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

10.8. *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

10.8.1 *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

10.8.2 *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.

10.8.3 *Gender.* Definitions apply to the masculine, feminine, and neuter genders of each term defined.

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

10.8.4 *Terms of Inclusion.* Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

10.9. *Further Assurances.* Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

10.10. *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

10.11. *Notices.* Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier. Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described in this § 10.11.

A. IF TO NAMED PLAINTIFFS:

Karen L. Handorf
Julie Goldsmith Reiser
Julie Selesnick
Jamie Bowers
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005
Fax: (202) 408-4699

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (206) 248-2822

B. IF TO DEFENDANTS:

14

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

> René E. Thorne
> Charles F. Seemann III
> Jackson Lewis P.C.
> 650 Poydras Street, Suite 1900
> New Orleans, Louisiana, 70130
> Fax: (504) 208-1759
>
> —and—
>
> Neil H. Dishman
> Sarah J. Gasperini
> Jackson Lewis P.C.
> 150 N. Michigan Ave., Suite 2500
> Chicago, IL 60601

Any notice(s) to FAI and/or FHC must also be delivered to:

> Bradford D. Roth
> Daniel Broderick, Jr.
> Cassiday Schade LLP
> 222 W. Adams Street
> Suite 2900
> Chicago, IL 60606

10.12. *Entire Agreement.* This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including any and all discussions, representations, warranties, or the like prior to the execution of this Settlement Agreement.

10.13. *Counterparts.* This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

10.14. *Binding Effect.* This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

10.15. *Cost of Notice.* Plaintiffs shall pay the costs for Class Notice.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

*Owens, et al. v. St. Anthony Medical Center, et al.*
Settlement Agreement, April 9, 2019

**FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS**

Dated this the 9th day of April, 2019.

By: /s/ Karen L. Handorf
Karen Handorf

Karen L. Handorf
Julie G. Reiser
Julie Selesnick
Jamie Bowers
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL, PLLC
190 South LaSalle Street
Suite 1705
Chicago, IL 60603

Lynn L. Sarko
Erin M. Riley
Laura R. Gerber
Havila Unrein
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Ron Kilgard
KELLER RORHBACK L.L.P.
3101 North Central Avenue
Suite 1400
Phoenix, AZ 85012

*Class Counsel*

17

*Owens, et al. v. St. Anthony Medical Center, et al.*
**Settlement Agreement, April 9, 2019**

**FOR ALL DEFENDANTS**

Dated this the 9th day of April, 2019.

By: *[signature]*
René E. Thorne
Charles F. Seemann III
Jackson Lewis P.C.
650 Poydras Street, Suite 1900
New Orleans, LA 70130

Neil H. Dishman
Sarah J. Gasperini
Jackson Lewis P.C.
150 N. Michigan Ave., Suite 2500
Chicago, IL 60601

*Attorneys for Defendants*